**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10   LESLEY DUKE,                                No. C 15-2564 PJH

           Plaintiff,

11                                              **ORDER DENYING PLAINTIFF'S**
                                                **MOTION TO TRANSFER VENUE;**
      v.                                        **ORDER GRANTING DEFENDANTS'**
12   FLYING J, INC.,                            **MOTION FOR SUMMARY JUDGMENT**

13
           Defendant.
14   _____

15   LESLIE DUKE,                                No. C 15-2566 PJH

16         Plaintiff,

17    v.

18   PILOT TRAVEL CENTERS, LLC,

19         Defendant,

20   _____/

21

22         Before the court is plaintiff's motion to transfer venue of the above-entitled actions to

23   the Eastern District of North Carolina, and defendants' motion for summary judgment as to

24   all claims asserted by plaintiff in these actions.  Having read the parties' papers and

25   carefully considered their arguments and the relevant legal authority, the court hereby

26   DENIES plaintiff's motion to transfer and GRANTS defendants' motion for summary

27   judgment.

28

**United States District Court**
For the Northern District of California

**BACKGROUND**

The Constitution grants the Weights and Measures power to Congress in U.S. Constitution art. I, § 8, cl.5. In exercising this power, Congress established the National Bureau of Standards ("NBS" – now known as the "NIST"), and empowered it to "develop, maintain, and retain custody of the national standards of measurement, and provide the means and methods for making measurements consistent with those standards. See 15 U.S.C. § 272(b)(2).

Congress directed NIST to "cooperate with the other departments and agencies of the Federal Government, with industry [and] with state and local governments . . . in establishing standard practices, codes, specifications, and voluntary consensus standards." 15 U.S.C. § 272(b)(10). NIST has defined the "customary" "gallon" as "231 cubic inches" without reference to temperature. 33 Fed. Reg. 10755 (July 28, 1968); 40 Fed. Reg. 3486 (July 22, 1975).

NIST established the National Conference on Weights and Measures ("NCWM") to "ensure that uniform standards are applied to commercial transactions by developing regulatory standards for consideration by each jurisdiction." NIST Handbook 44, which has been adopted by every state at issue in the present case, (a) provides technical requirements for weighing and measuring devices, including motor fuel dispensers, (b) requires that motor fuel be dispensed to retail customers in gallons or liters; and (c) defines "gallon as a unit of volume equal to 231 cubic inches "exactly" and that "a unit is fixed by definition and is independent of such physical conditions as temperature" and provides as examples, "the meter, the liter, . . . the gallon."

Rushing v. Alon, Case No. 06-7621, was originally filed in this court on December 13, 2006, as a proposed class action, asserting claims against numerous defendants under

2

**United States District Court**
For the Northern District of California

the consumer protection laws of Arizona, California, Florida, New Jersey, North Carolina, Texas, and Virginia.  The original plaintiffs' claims all arose from the retail sale of gasoline and diesel fuel.  Plaintiffs alleged that because the volume of motor fuel expands as its temperature rises, selling a gallon of motor fuel (231 cubic inches at 60 degrees Fahrenheit) at a temperature exceeding 60 degrees Fahrenheit ("hot fuel") without disclosing that fact to consumers or adjusting the price to compensate constituted an unlawful and deceptive business practice.  In the first amended complaint, filed March 4, 2007, plaintiffs added claims under the consumer protection laws of Arkansas, Nevada, New Mexico, the District of Columbia, plus a claim of breach of contract.

On July 9, 2007, the case was transferred to MDL No. 1840 in the District of Kansas, Case No. 07-MD-1840, where it was coordinated for pretrial proceedings.  On August 30, 2013, the Judicial Panel on Multidistrict Litigation issued a conditional remand order, directing that the claims asserted against certain defendants be remanded to this court. The MDL court subsequently severed the claims asserted against each of four defendants, created  three new cases, and remanded all four to this court.  The sole remaining plaintiff in the remanded cases was Lesley Duke.[1]

## MOTION TO TRANSFER VENUE

Plaintiff seeks an order transferring the above-entitled actions to the Eastern District of North Carolina.  He references both 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). However, he provides no basis for a transfer under § 1406(a), and his sole argument in support of transfer under § 1404(a) is that "[i]t would be an inconvenience for plaintiff to travel approx. 3000 miles to appear in California court" and "it would also be an

---

[1]  This court granted summary judgment in Case No. C-06-7621 on March 25, 2016, and Case No. C-15-2567 was dismissed on December 16, 2015, pursuant to stipulation.

**United States District Court**
For the Northern District of California

1    inconveni[en]ce for possible witnesses to travel to CA."

2        Defendants Pilot Travel Centers LLC and Flying J, Inc. ("Pilot/Flying J")[2] oppose the

3    motion.  First, they assert, § 1406(a) provides no authority for this case to be transferred,

4    because plaintiff chose to commence this case in this court nine years ago, and thus

5    waived the right to allege "improper" venue.  Moreover, they contend, improper venue is an

6    affirmative defense, which a defendant can raise either in its answer or in a motion prior to

7    its answer.  See Fed. R. Civ. P. 12(b).

8

9        Second, Pilot/Flying J contend that this case cannot be transferred under

10   § 1404(a), for the additional reasons that plaintiff has not established that the suit "could

11   have been brought" in the Eastern District of North Carolina, and has not established that

12   the "convenience" factors warrant transfer.  Defendants also note that a transfer for

13   "convenience" should be brought as soon as the convenience becomes apparent, but that

14   here, plaintiff has unduly delayed in seeking transfer.

15

16       In addition, Pilot/Flying J assert that plaintiff has not identified any witnesses who will

17   be inconvenienced by the transfer, or the locations of any fuel purchases in North Carolina,

18   or explained why, of all the possible states, North Carolina is the most convenient for

19   witnesses and parties, including defendants.  They contend that because defendants and

20   witnesses will most likely have to travel no matter what venue is chosen, California is not

21   materially worse than any other venue at this late stage of the litigation (particularly in view

22   of the fact that all discovery is complete).  They assert further that plaintiff knew he would

23   have to travel to California from North Carolina when he filed the original complaint in 2006,

24

25

26   when he filed the second amended complaint in 2009, and when he filed the operative

27

28       [2]  At the time this litigation commenced in 2006, Pilot and Flying J were separate entities.  It is the court's understanding that they are presently owned by the same company.

4

**United States District Court**
For the Northern District of California

1  complaint in his individual cases in the MDL (prior to the remand).

2  Finally, Pilot/Flying J argue, a change of venue so late in the case would prejudice

3

4  them because such a change would substantially increase the expense of the litigation, as

5  they would have to file another motion for summary judgment in the new venue.

6  The court finds that the motion must be DENIED.  Plaintiff has not met his burden of

7  showing that transfer is warranted under either § 1406(a) or § 1404(a).  First, by choosing a

8  particular forum to commence the action, a plaintiff is generally considered to have waived

9  objections to proceeding in that forum.  See Olberding v. Illinois Cent. Ry. Co. 346 U.S.

10  338, 340 (1953).  Indeed, while a plaintiff may be permitted to challenge venue where the

11

12  defendant misled the plaintiff as to its residence, causing the action to be filed in an

13  improper venue, it is rare to see a motion to transfer venue made by a plaintiff.  See

14  Schwarzer, et al., Federal Civil Procedure Before Trial (2015 ed.) § 4:678.

15  Thus, plaintiff cannot show that the chosen venue is "improper," such that transfer is

16  warranted under § 1406(a).  In addition, plaintiff in this case has not established that the

17

18  case "might have been brought" in the Eastern District of North Carolina, and has made no

19  showing to support the "convenience" factors as required under § 1404(a).

20  **MOTION FOR SUMMARY JUDGMENT**

21  Pilot/Flying J seek summary judgment against plaintiff, as to all claims asserted

22  against them.  Plaintiff did not file an opposition to the motion, despite having agreed to the

23

24  briefing schedule set by the court at the further case management conference held on

25  November 19, 2015.

26  In the second amended complaint ("SAC"), filed while the case was pending in the

27  MDL court, plaintiffs asserted breach of contract claims against Flying J and Pilot Travel

28  Centers under the laws of a number of states, including Florida, Louisiana, Mississippi,

5

**United States District Court**
For the Northern District of California

1  Oklahoma, North Carolina, South Carolina, Tennessee, Texas, and Virginia.

2  Plaintiffs also alleged that Flying J had violated the Florida Deceptive and Unfair

3  Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq,; the North Carolina Unfair

4  and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. Ann. § 75-1.1 et seq.;

5  the (3) Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code Ann.

6  § 17.46 et seq.; and (4) the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 et

7  seq., and that Pilot had violated the FDUTPA.

8  In their motion, Pilot/Flying J make three main arguments – that summary judgment

9
10  is appropriate on the breach of contract and consumer protection claims; that all of

11  plaintiff's claims present nonjusticiable political questions; and that all of plaintiff's claims

12  are preempted.

13  In their first main argument, Pilot/Flying J assert that summary judgment is

14  appropriate on the breach of contract and consumer protection claims.  In the contract

15
16  claim, plaintiff alleges that each time he contracted to purchase motor fuel from defendants,

17  the parties' understanding was that he would pay a specified price for, and that defendants

18  would deliver a unit of, a measure expressed in "gallons."  SAC ¶¶ 241-245.  He asserts

19  that the definition of "gallon" under the petroleum industry standard known as ASTM-IP D

20  1250 is 231 cubic inches of fuel at 60 degrees Fahrenheit, SAC ¶¶ 88-93, 251, and that

21  selling 231 cubic inches at a temperature greater than 60 degrees results in a "gallon" that

22
23  contains less fuel, SAC ¶ 95.  Thus, he asserts, because a "gallon" defined by volume

24  without reference to temperature is "not a standard unit of measure," such a volumetric

25  "gallon" is not the meaning of "gallon" intended by the parties in their agreements for sale of

26  motor fuel, and thus constitutes a breach of the sales agreement.  SAC ¶ 257-264.

27  Pilot/Flying J argue that plaintiff's breach of contract claim is meritless, for three

28

United States District Court
For the Northern District of California

1   reasons.  First, they assert, the relevant legal framework in the states at issue is the same

2   as that found in California, and that this court should grant summary judgment as to the

3   contract claim for the same reasons that the MDL court granted summary judgment as to

4   the California claim of breach of the implied covenant of good faith and fair dealing

5   asserted against Chevron USA.  See C-07-MD-1840 (D. Kan., Doc. 4600, Jul. 19, 2013)

6

7   ("Rushing SJ Order"), at 33-34.

8        Second, Pilot/Flying J argue, just like California, the states at issue define "gallon" as

9   exactly 231 cubic inches; have each adopted into their respective states' laws NIST

10
    Handbook 44; and have each defined "gallon" to exclude temperature consideration.  Thus,
11
    they contend, as explained by the MDL court, any attempt by plaintiff to construe the term
12
    "gallon" to mean temperature-adjusted gallon is contrary to law and facially unreasonable.
13
    See id.
14

15      Third, Pilot/Flying J assert, the contract claim fails because, as plaintiff conceded in

16
    his deposition, he knew that defendants were dispensing non-temperature-adjusted motor
17
    fuel, yet he freely paid the price per gallon shown on the station's price sign and dispenser.
18
    That is, he deliberately entered into transactions with full knowledge that the retailers
19
    understood "gallon" to mean one thing but now claims he secretly believed the term to
20

21   mean something else (temperature adjusted fuel).  Defendants contend that no viable

22   breach-of-contract claim can stand under these circumstances.

23
         Pilot/Flying J also contend that the statutory claims fail as a matter of law.  They note
24
    that the MDL court dismissed the California unfair competition claim in the Rushing case
25

26   because California law protected the defendants from liability for claims regarding the

27   manner in which defendants dispense motor fuel – by the gross gallon, without disclosing

28   or adjusting for, temperature.  See id. at 19-29.

7

**United States District Court**
For the Northern District of California

Pilot/Flying J reiterate that all the states at issue (Florida, Louisiana, Mississippi, South Carolina, North Carolina, Oklahoma, Tennessee, Texas, and Virginia) define "gallon" as "a volume of liquid – 231 cubic inches to be exact – regardless of temperature; have adopted the NTIS Handbook 44 into their state law; and have defined "gallon" to exclude temperature considerations.  Thus, defendants argue, each of these states' laws authorizes the conduct at issue, and plaintiff's attempt to change the law regarding the terms of this retail transaction (purchase of motor fuel) is facially unreasonable.

Pilot/Flying J note that Handbooks 44 and 130[3] draw bright lines between retail and wholesale transactions, and between retail motor fuel and other fuel products; and that the Handbooks expressly recognize automatic temperature compensation ("ATC") to 60 degrees Fahrenheit in <u>wholesale</u> motor fuel and other fuel-delivery applications, but that in contrast, the provisions applicable to retail motor fuel sales make no mention of ATC, and actually require a non-temperature compensated method of sale.

Pilot/Flying J assert that North Carolina and Texas provide for virtually identical common law protections, and demand the same result as California law; that Florida and Virginia law provide even more persuasive protections via an express statutory safe harbor, and that both the FDUTPA and the VCPA expressly bar plaintiff's consumer protection claims.  Defendants reiterate that there can be no violation of FDUTPA, VCPA, NCUDTPA, or TDTPA where the alleged misconduct is required or specifically permitted by federal or state law, and that each of these states' laws require that motor fuel be sold on a volumetric basis (without reference to temperature).

Finally, Pilot/Flying J argue that the method of sale that plaintiff is seeking to foist

---

[3] NIST Handbook 130 lists uniform laws and regulations in the area of legal metrology and engine fuel quality developed by the National Conference of Weights and Measures (NCWM), and summarizes the adoption of those laws and regulations by the states.

upon defendants is itself illegal, as defendants cannot lawfully sell fuel at retail with

reference to temperature, and cannot use an ATC device for the retail sale of motor fuel in

Florida, Virginia, North Carolina, and/or Texas, without third-party regulators first changing

the law to permit ATC and a temperature-reference method of sale.  Pilot/Flying J contend

that in 2007 and 2009, the NCWM rejected proposals to change the law to permit or

mandate a temperature-compensated method of sale for retail fuel sales, and that these

attempts to change the law occurred after multiple studies had been conducted on the

costs and benefits of a temperature-compensated method of sale.  They assert that the

NCWM vote left in place the current law, which permits only the retail sale of fuel in

volumetric gallons, without reference to temperature.

In their second main argument, Pilot/Flying J contend that all of Mr. Duke's claims

present nonjusticiable political questions.  The "political question" doctrine prevents courts

from making policy choices and value determinations that are committed to the political

branches.

In Baker v. Carr, 369 U.S. 186 (1962), the Supreme Court laid down the following six

independent tests, any one of which renders a case a non-judiciable "political question," as

follows:

> Prominent on the surface of any case held to involve a political
> question is found a textually demonstrable constitutional commitment of the
> issue to a coordinate political department; or a lack of judicially discoverable
> and manageable standards for resolving it; or the impossibility of deciding
> without an initial policy determination of a kind clearly for nonjudicial
> discretion; or the impossibility of a court's undertaking independent resolution
> without expressing lack of the respect due coordinate branches of
> government; or an unusual need for unquestioning adherence to a political
> decision already made; or the potentiality of embarrassment from multifarious
> pronouncements by various departments on one question.

> Unless one of these formulations is inextricable from the case at bar,
> there should be no dismissal for non-justiciability on the ground of a political

1    question's presence. The doctrine of which we treat is one of "political
2    questions," not one of "political cases."

3    Id. at 217, quoted in U.S. Dep't of Commerce v. Montana, 503 U.S. 443, 456 (1992).

4    Defendants contend that the first two factors are present here.  They assert that it is

5    undisputed that there is a "textually demonstrable commitment of the issue to a coordinate

6    political department," as the Constitution explicitly commits to Congress the power to fix

7    "Standards of Weights and Measures."

8

9    In addition, they argue, resolving plaintiff's claims requires a "quantifying judgment

10   that is unguided and ill-suited to the development of judicial standards."  They contend that

11   numerous technical and logistical issues must be determined for retail temperature

12   compensation that defy resolution by any judicial standard – including product densities,

13   volume correction factors, and specifications for field inspection test procedures and

14   disclosures in labeling, signage, and receipts.  They assert that evaluating the pros and

15   cons of alternative retail sale methods is a quintessential legislative function, and moreover,

16

17   that it would be improper for the court to re-evaluate the need to adopt temperature

18   compensations requirements for the retail sale of motor fuel when the political branches

19   have already rejected such a requirement.

20

21   In their third main argument, Pilot/Flying J argue that all Mr. Duke's claims are

22   preempted.  They note that federal law can preempt state law in three ways – express

23   preemption, field preemption, and conflict preemption, and assert that this case involves

24   both field preemption and conflict preemption.  They contend that field preemption applies

25   because of the broad grant of congressional authority to NIST to "secur[e] uniformity in

26   weights and measures," see 15 U.S.C. § 272(c)(4), and argue that because of this broad

27   grant of authority, plaintiff's interference with the policy choice of allowing sales of retail

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

motor fuel without reference to temperature is preempted.  They assert that conflict

preemption also applies, to the extent that compliance with both federal and state law is

impossible.

The court finds that the motion must be GRANTED, as to both the claims of breach

of contract, and the claims under the consumer protection statutes of the states at issue.

First, plaintiff cannot establish breach of contract.  As is true under California law, the

fundamental goal of contract interpretation in the states at issue is to give effect to the

mutual intention of the parties as it existed at the time they entered into the contract.

See La. Civ. Code art. 2045; Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857

So. 2d 748, 752 (Miss. 2003); Cossey v. Cherokee Nation Enters., LLC, 212 P.3d 447, 468

(Okla. 2009); Progressive Max Ins. Co. v. Floating Caps, Inc., 747 S.E.2d 178, 183-84

(S.C.  2013); Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885,

890 (Tenn. 2002).

Moreover, the court interprets the parties' intent based on objective, rather than

subjective criteria.  See La. Civ. Code art. 2045 (2013), Revision Comments – 1984, (b);

Tupelo Redev. Agency v. Abernathy, 913 So.2d 278, 284 (Miss. 2005); Whitehorse v.

Johnson, 156 P.3d 41, 47 (Okla. 2007); Laser Supply and Servs., Inc. v. Orchard Park

Assocs., 382 S.C. 326, 334 (S.C. App. 2009); Moody v. Realty Co., Inc. v. Huestis, 237

S.W.3d 666, 674 (Tenn. App. 2007).

Further, the Court construes the words of a contract according to their ordinary and

popular sense, and when the words of a contract are clear, the agreement's language

controls.  See La. Civ. Code arts. 2046, 2047; Miss. Farm Bureau Cas. Ins. Co. v. Britt, 826

So. 2d 1261, 1266 (Miss. 2002); Whitehorse, 156 P.3d at 47 (Oklahoma); Baugh v.

Columbia Heart Clinic, P.A., 402 S.C. 1, 23 (S.C. App. 2013); Perkins v. Metro. Gov't of

11

1  Nashville, 380 S.W.3d 73, 85 (Tenn. 2012).

2      In addition, generally speaking, the law existing at the time and place the contract

3  was made is part of the contract.  See Breaux v. Avondale Indus., Inc., 880 So. 2d 36, 37

4  (La. App. 2004); Ivison v. Ivison, 762 So. 2d 329, 335 (Miss. 2000); Pub. Serv. Co. of Okla.

5  v. State ex rel. Okla. Corp. Com'n,, 115 P.3d 861, 884 (Okla. 2005); Catawba Indian Tribe

6  of S.C. v. State, 372 S.C. 519, 591 (S.C. 2007); Ellis v. Pauline S. Sprouse Residuary Tr.,

7  280 S.W. 3d 806, 814 (Tenn. 2009).

8

9      Second, just like California, the states at issue define "gallon" as exactly 231 cubic

10  inches, have each adopted into their respective state's laws NIST Handbook 44, and have

11  each defined "gallon" to exclude temperature considerations.  See Fla. Stat. § 531.40; La.

12  R.S. 3:4604; LAC XXXV.129 (2011); 2-1-4:09 Miss. Admin. Code § 116.01; 2-1-4:08 Miss.

13  Admin. Code § 100.02.5; Miss. Code § 75-27-5; N.C. Gen. Stat. § 81A-2; Okla. Stat. tit. 2,

14  §§ 14-34; 14-3; 14-32B; Okla. Admin. Code tit. 165, §§ 15-15-7, 15-7-1; and tit. 35

15  §§10-15-1, 10-15-2, 10-15-3; S.C. Code Ann. § 39-9-60; Tenn. Code Ann. § 47-26-907(a);

16  Tex. Agric. Code Ann. §§ 13.024, 13.02; 4 Tex. Admin. Code § 12.10; Tex. Tax Code

17  § 16.001(27); Va. Code Ann. §§ 3.2-5604, 3.2-5606, 3.2-5620, 3.2-5700.

18

19      Thus, any attempt by plaintiff to construe the term "gallon" to mean "temperature-

20  adjusted gallon" is contrary to law and facially unreasonable.  See Rushing SJ Order at

21  33-34 ("[P]laintiffs' attempt to construe the term 'gallon' to mean temperature-adjusted

22  gallon is both contrary to [] law . . . and facially unreasonable.)  The MDL court explained

23  that the law defines "gallon" as exactly 231 cubic inches and found that no reasonable

24  consumer could understand it to mean something different.  Id.

25

26      Finally, plaintiff's contract claim fails for the additional reason that he knew the

27  defendants were dispensing non-temperature-adjusted motor fuel – a fact plaintiff freely

United States District Court
For the Northern District of California

admitted in his deposition.  See Deposition of Lesley Duke, Exh. B to Declaration of Tammy

B. Webb (Doc. 36-4), filed herein on December 16, 2015, at 86-88, 133-135.  Yet plaintiff

nonetheless concluded his purchases by paying the price per gallon shown on the station's

price sign and dispenser.  He deliberately entered into transactions with full knowledge that

the retailers understood gallon to mean one thing, when he claims he secretly believed the

term to mean something else (i.e., that "gallon" signified temperature- adjusted fuel).  No

viable breach-of-contract claim can stand under these circumstances.

Nor can plaintiff prevail on his claim of violation of state consumer laws.  As

indicated above, the MDL court dismissed the California unfair competition claim in Rushing

because California law protected the defendants from liability for claims regarding the

manner in which defendants dispense motor fuel – by the gross gallon, without disclosing

or adjusting for temperature.  See Rushing SJ Order, at 19-29.  The court pointed the

California Supreme Court's decision in Cel-Tech Commcn's, Inc. v. L.A. Cellular Tel. Co.,

20 Cal. 4th 163, 182 (1999), which stands for the principle that conduct expressly

authorized by law cannot be subject to liability.  As the court noted, "in statutory

construction, specific governs general."  Rushing SJ Order at 19.  Similarly, conduct

authorized via a specific consumer protection statutory scheme, i.e., the Weights and

Measures regime, cannot impose liability under a general consumer protection statute.

See id. at 19-20, 24.  Conduct cannot be lawful and unlawful at the same time.

Handbooks 44 and 130 draw bright lines between retail and wholesale transactions

and between retail motor fuel and other fuel products.  The Handbooks expressly recognize

ATC in wholesale motor fuel and other fuel-delivery applications. In stark contrast, the

provisions applicable to retail motor fuel sales make no mention of ATC. Instead, the

provisions applicable to retail motor fuel sales require a non-temperature compensated

(non-ATC) method of sale.  The express recognition of ATC for other fuel-delivery applications, yet their silence on ATC for retail transactions, must be construed as intentional – as a prohibition against ATC at retail.

Both North Carolina and Texas provide for virtually identical common law (specific authorization) protections and demand the same result as under California law.  Florida and Virginia law provide even more persuasive protections via an express statutory safe harbor.  There can be no violation of the FDUTPA, VCPA, NCUDTPA, or TDTPA where the alleged misconduct is required or specifically permitted by federal or state law.  See Fla. Stat. § 501.212; Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228, 1233 (S.D. Fla. 2007); Va. Code Ann. § 59.1-199; Smith v. U.S. Credit Corp., 626 F. Supp. 102, 103 (E.D. Va. 1985); Strategic Outsourcing, Inc. v. Cont'l Cas. Co., 414 F. Supp. 2d 545, 554-55 (W.D.N.C. 2006); Boales v. Brighton Bldrs., Inc., 29 S.W.3d 159, 165 (Tex. App. – Houston 14th Dist. 2000).

Each of these state's laws and administrative regulations/procedures require that motor fuel be sold on a volumetric basis (without reference to temperature), and provide specific penalties if motor fuel is sold on another basis.  They have all adopted the NIST definitions of basic units of weights and measures, including Handbook 44, which provides that one gallon of retail motor fuel is defined as exactly 231-cubic-inches, irrespective of temperature.  See Handbook 44, § 3.30 ¶ S.1.2.1; id., App. B at B-3; id., App. C at C-5, C-11, C-17; see also Fla. Stat. § 531.40 (adopting Handbook 44); Va. Code Ann. §§ 3.2-5604, 3.2-5606, 3.2-5620, 3.2-5700 (adopting Handbook 44); N.C. Gen. Stat. § 81A-2 (adopting Handbook 44); Tex. Agric. Code Ann. §§ 13.024, 13.025 ("[t]he gallon contains 231 cubic inches."); 4 Tex. Admin Code § 12.10 (adopting Handbook 44); Tex. Tax Code § 16.001(27) ("'Gallon' means a unit of liquid of measurement as customarily

14

used in the United States and that contains 231 cubic inches by volume."). Thus, the specific statutory consumer protection scheme that authorizes the challenged business practices at issue here is the same for all states at issue.

Finally, while not necessary to the decision, the court finds that summary judgment is appropriate for the additional reasons argued by defendants – that the claims present nonjusticiable political questions, and that they are barred under the doctrine of field preemption.

## CONCLUSION

In accordance with the foregoing, the court finds that plaintiff's motion to transfer venue must be DENIED, and that defendants' motion for summary judgment must be GRANTED. This order terminates these cases and any pending motions.

**IT IS SO ORDERED.**

Dated: April 11, 2016

_____
Phyllis J. Hamilton
UNITED STATES DISTRICT JUDGE